UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE R. McCLURE,

     Plaintiff,                Case No. 2:20-cv-12517

                                 District Judge Victoria A. Roberts

v.                               Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a Social Security case.  Plaintiff Kyle R. McClure ("McClure")

brings this action under 42 U.S.C. § 405(g), challenging the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying his

application for Disability Insurance Benefits ("DIB") under the Social Security Act

("the Act").  Both parties have filed summary judgment motions (ECF Nos. 16,

19), which have been referred to the undersigned for a Report and

Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that the

Commissioner's motion (ECF No. 19) be GRANTED, that McClure's motion

(ECF No. 16) be DENIED, and that the Commissioner's decision be AFFIRMED.

## II.     Background
### A.     Procedural History

McClure was 39 years old at the time of the December 4, 2015 alleged onset

date.  (ECF No. 14, PageID.225).  He completed two years of college and worked

previously as an HVAC controls specialist at University of Michigan Plant

Operations.  (*Id.*, PageID.253).  He alleges disability due to spondylolysis, pars

defects, neuroforaminal stenosis, lumbar radiculopathy, and an L5-S1

transforaminal lateral interbody fusion.[1]  (*Id.*, PageID.252).

After McClure's July 2, 2018 DIB application was denied at the initial level

on August 20, 2018, he timely requested an administrative hearing, held on

September 19, 2019 before Administrative Law Judge ("ALJ") Patrick MacLean.

(*Id.*, PageID.85, 155).  McClure, represented by attorney William Crawforth,

testified, as did a Vocational Expert ("VE").  (*Id.*, PageID.89, 117).  Prior to the

---

[1] "A pars defect is a condition affecting the lumbar (lower) spine."
https://lnpuk.com/pars-defect/. (Last visited February 1, 2022).  "A pars defect
means that the lower and upper portion of the vertebrae (spine bones) can become
separated during repeated stress and strain."  *Id.*

hearing testimony, McClure's counsel amended the alleged onset of disability

("AOD") date to June 5, 2018.[2]  (*Id*., PageID.87).

McClure offered the following testimony at the hearing:

He held an associate degree in Applied Science Journeypersons Industrial.

(*Id*., PageID.90).  He lived in a three-level, single-family home.  (*Id*., PageID.90-

91).  He slept and showered on the first floor of the home and climbed stairs only

to put his children to bed in the evening.  (*Id*., PageID.91).  He experienced

difficulty climbing and descending stairs due to balance problems.  (*Id*.).  His wife

held a full-time job.  (*Id*., PageID.92).  His children, six and four, attended first

grade and preschool respectively.  (*Id*.).  His wife and children were all in good

health.  (*Id*.).

McClure drove his children to school in the morning.  (*Id*., PageID.93).  He

and his wife shared the transportation of the children to after school activities.

(*Id*.).  He drove one child or the other to after-school activities approximately eight

times every week.  (*Id*.).  The activities were located within the community.  (*Id*.).

His driving trips on behalf of his children were strictly local and he had not taken

any out-of-town trips since June 2018.  (*Id*., PageID.105).  He was able to make

---

[2] In an earlier application for DIB, the ALJ found McClure not disabled
between December 4, 2015 and June 4, 2018.  (*Id*., PageID.138).

the approximately hour-long drive to the hearing but experienced "intense" pain sitting for that duration.  (*Id.*, PageID.105-106).

On a typical day, McClure made breakfast for his family, made his children's lunches, washed dishes, and "occasionally" performed other household chores.  (*Id.*, PageID.93).  He did not perform laundry or outdoor chores.  (*Id.*, PageID.94-95).  He was able to make short grocery trips that did not require him to stand for any length of time.  (*Id.*, PageID.95).  He had not worked since December 2015 due the inability to stand for any significant period.  (*Id.*, PageID.95-97). Since ceasing work, he received long-term disability payments from his employer. (*Id.*, PageID.96).  He "loved" his former work.  (*Id.*, PageID.97).   Had he continued to work, 2019 would have been his 25th year of employment.  (*Id.*).  The former work required him to lift between 40 and 100 pounds.  (*Id.*, PageID.98). He had not looked for work since the onset of disability.  (*Id.*).  He continued to see his medical providers and take medication.  (*Id.*, PageID.98-99).  He took Valium once a day to relieve pain and to relax and took Motrin to reduce inflammation.  (*Id.*, PageID.100-101).  He also took medication for hypertension brought on by pain, as well as multivitamins.  (*Id.*, PageID.101).  Valium caused the occasional side effects of morning headaches and disorientation.  (*Id.*, PageID.102).

February 2016 fusion surgery of the lumbar spine worsened rather helped McClure's condition. (*Id.*, PageID.102-103). Before surgery, his pain was limited to his back and left leg but afterward, also radiated into his right leg and upward from his lumbar spine. (*Id.*, PageID.103). He experienced the most pain in the lower extremities, rating his pain level as a "seven" or "eight" out of ten. (*Id.*, PageID.104). Despite the use of pain medication, he experienced sleep disturbances preventing him from sleeping more than four hours a night. (*Id.*). He no longer hunted, fished, or engaged in other outdoor activities. (*Id.*, PageID.106). He owned a boat but over the summer had used it for less than an hour on one occasion to take his children fishing. (*Id.*, PageID.107). He enjoyed photographing his children's events. (*Id.*, PageID.106). He took his children to the movies once every three weeks but was unable to sit through an entire feature. (*Id.*, PageID.107-108).

McClure was unable to stand for even five minutes at one time due to radiating back pain. (*Id.*, PageID.108). He was limited to sitting for 30 minutes and walking for no more than 200 feet due to pain. (*Id.*). He required a 10-minute break after walking for any distance. (*Id.*, PageID.109). He relieved his pain by kneeling. (*Id.*). In addition to the lower back-related conditions, he experienced Carpal Tunnel Syndrome ("CTS") and had undergone carpal tunnel release on the right in April 2018. (*Id.*). Despite the surgery, he experienced "very sharp" pain

while pushing downward with right hand.  (*Id*., PageID.110).  He refrained from overuse of his left hand due to continued numbness.  (*Id*.).  He did not experience difficulty fingering.  (*Id*., PageID.111).

McClure believed that his memory had worsened since the 2016 back surgery.  (*Id*.).  He experienced problems focusing on written material.  (*Id*.).  He spent three to four hours using a computer or cell phone each day to keep track of his children's schoolwork and activities as well as events in the community.  (*Id*., PageID.11-112).

In response to questioning by his attorney, McClure opined that he would be unable to perform even sedentary, unskilled work on a full-time basis as a result of sleep disturbances and the need to recline up to four times a day due to back pain.  (*Id*., PageID.113).  His most comfortable position was reclining with his legs slightly elevated.  (*Id*., PageID.114).  He had undergone steroid injections and nerve ablation (burning the nerves) for pain relief.  (*Id*.).  The nerve ablation resulted in an exacerbation of pain.  (*Id*.).  His long-term goal was to return to his former job.  (*Id*., PageID.115).  He believed that his back condition had worsened since the June 4, 2018 denial of benefits on the earlier claim.  (*Id*., PageID.116).

On October 15, 2019, ALJ MacLean found McClure not disabled.  (*Id*., PageID.56-68).  On September 1, 2020, the Appeals Council denied review of the

ALJ's determination.  (*Id*., PageID.14).  McClure timely filed a claim for judicial review of the final decision on September 14, 2020.

B.     Medical Evidence[3]

In December 2017, McClure reported hand numbness.  (*Id*., PageID.312). Treating records by Jane Beimer, M.D. note the ongoing conditions of spondylolisthesis, post-laminectomy syndrome, lumbar radiculopathy, lower right leg pain, and chronic low back pain.  (*Id*., PageID.311).  Dr. Beimer noted that a recent MRI showed continued spondylolisthesis at L5-S1 with bilateral neuroforaminal stenosis.  (*Id*., PageID.310).

January 2018 nerve conduction studies were positive for bilateral CTS, greater on the right.  (*Id*., PageID.430).  February 2018 records by Michael Fitzsimmons, M.D. note that McClure continued to report the bilateral CTS symptoms of pain, numbness, and hand and wrist tingling.  (*Id*., PageID.420). May 2018 post-surgical records for the April 25, 2018 right carpal tunnel release state that McClure was "feeling great" and did not have pain or numbness on the right.  (*Id*., PageID.424, 428).  Additional follow-up records from later the same month note good results except when applying pressure to the right wrist.  (*Id*.,

---

[3] Medical evidence predating the amended alleged onset date of June 5, 2018 is included for background purposes only.

PageID.426).  McClure reported that his left hand remained "mildly symptomatic."
(*Id*.).

The same month, Dr. Beimer noted that a recent EMG of the lower
extremities was negative.  (*Id*., PageID.305-306).  She acknowledged that McClure
would have difficulty returning to his former work involving the climbing of
ladders and bending but could not "support complete medical disability based on
presenting symptoms."  (*Id*., PageID.306).  July 2018 treating records note that
McClure's level of activity was "moderate" and included aerobic exercise and
walking "almost daily."  (*Id*., PageID.319).  McClure described his back pain as
"worsening."  (*Id*., PageID.321).  He was prescribed Motrin 800 and Valium.  (*Id*.,
PageID.322).  October and December 2018 steroid injections were performed
without complications.  (*Id*., PageID.371-372, 396).  August 2019 records by IHA
Chelsea Family Medicine note McClure's report of worsening back pain.  (*Id*.,
PageID.406).  McClure reported that January and July 2019 nerve ablation
procedures did not improve his pain level.  (*Id*., PageID.406).

In February 2019, McClure underwent a nerve block for radiating lumbar
spine pain.  (*Id*., PageID.361).  Treating records note that injections provided 24
hours of 100 percent relief and two weeks of 50 percent pain relief.  (*Id*.).  March
2019 records show that the conditions of diabetes and hypertension were well
controlled.  (*Id*., PageID.330).

In August 2018, Robert Roschmann, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that McClure could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation.  (*Id.*, PageID.149-150).  He found that McClure was limited to occasionally stooping, crouching, and climbing of ladders, ropes, and scaffolds.  (*Id.*, PageID.150).  He found no manipulative limitation.  (*Id.*, PageID.150-151).  He found that "new evidence on file" did "not alter the previous ALJ['s] decision."  (*Id.*, PageID.151).

### III.     Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or

mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520. "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

The ALJ began his determination by finding that he was not bound by the Residual Functional Capacity ("RFC") for exertionally light work found in the June 4, 2018 opinion of the ALJ on McClure's prior application due to "new and additional evidence" supporting the finding that McClure was now limited to

sedentary work.  (ECF No. 14, PageID.56, 61, 64, 132).  The ALJ also determined that the condition of depression was no longer a severe impairment, which McClure does not challenge.  (*Id.*, PageID.59, 130).

Then, following the sequential analysis set forth above, the ALJ found that McClure was not disabled under the Act.  At Step One, the ALJ found that McClure had not engaged in substantial gainful activity since the amended alleged onset date of June 5, 2018 thorough the date of the decision.  (*Id.*, PageID.59).  At Step Two, the ALJ found that McClure had the severe impairments of "status post lumbar laminectomy and fusion; post laminectomy syndrome; lumbosacral spondylolisthesis; lumbar spine radiculopathy; lumbar spine neuroforaminal stenosis; obesity; and bilateral [CTS], status-post right wrist release."  (*Id.*).  At Step Three, the ALJ found that McClure's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*, PageID.61).

The ALJ then assessed McClure's RFC, concluding that he was capable of performing exertionally sedentary work with the following additional limitations:

> [H]e requires a sit/stand option, sitting for one hour and standing for 15 minutes; occasionally climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, crouch, kneel, and crawl; frequently handle and feel objects with the non-dominant left upper extremity; avoid all exposure to excessive vibration; avoid concentrated use of hazardous moving machinery; avoid concentrated exposure to unprotected heights; and based on physical symptoms,

> work is limited to simple, routine, and repetitive tasks, performed in a
> work environment free of fast-paced production requirements
> involving only simple work-related decisions.
> .

(*Id*.).

At Step Four, the ALJ found that McClure was unable to perform his past

relevant work. (*Id.*, PageID.66). The ALJ cited the VE's hearing testimony in

support of his Step Five finding that McClure could perform the unskilled,

sedentary work of a document preparer (44,000 positions in the national economy);

phone quotation clerk (60,000); and addresser (8,400). (*Id.*, PageID.67, 120-121).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision under 42 U.S.C. § 405(g). Although the court can examine

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health*

*& Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one. Judicial

review is constrained to deciding whether the ALJ applied the proper legal

standards in making his or her decision, and whether the record contains

substantial evidence supporting that decision. *Tucker v. Comm'r of Soc. Sec*., 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec*.,

880 F.3d 778, 783 (6th Cir. 2017)(same).

An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g). The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395

(6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

## V.    Analysis[4]

McClure requests a remand to the administrative level for an award of benefits, arguing first that the ALJ erred by failing to consider the right upper extremity limitations caused by CTS.  (ECF No. 16, PageID.450).  Second, McClure disputes the finding that he was capable of full-time work, arguing that his ability to prepare meals, drive, and perform household chores on a part-time basis was improperly used to support the non-disability finding.  (*Id.*, PageID.455). Third, he contends, in effect, that he is not capable sitting for one hour and

---

[4] McClure's claims of error are run into one long argument.  The undersigned will separately address the alleged manipulative limitations, the need to be absent or off task, and the "sit/stand" option found in the RFC.

standing for 15 minutes at a time as set forth in the RFC.  (*Id.*, PageID.455, 457, 463).

The Commissioner argues that the ALJ properly assessed the manipulative limitations, noting that while the RFC does not impose upper right extremity limitations, the ALJ discussed April 2018 right carpal tunnel release surgery and the resulting reduction of symptoms.  (ECF No. 19, PageID.482).  The Commissioner argues further that McClure has not met his burden to show that he is unable to perform a limited range of sedentary work on a continuous basis.  (*Id.*, PageID.480-482).  The Commissioner argues that substantial evidence supports the finding that McClure is capable of sitting for one hour and standing for 15 minutes at a time and denies that the inclusion of the sit/stand option in the RFC prevents the performance of sedentary work.  (*Id.*, PageID.485).

### A.     The Manipulative Limitations

At Step Two of the sequential analysis, the ALJ found that bilateral CTS, "status-post right wrist release" was a severe impairment.  (ECF No. 14, PageID.59).  McClure appears to argue that the failure to include right upper extremity limitations in the RFC constitutes error.

As to the possible effect of manipulative limitation on sedentary work, SSR 96-9p states as follows:

> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity.  Fine movements of small

15

objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require bilateral manual dexterity"). When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

1996 WL 374185, at *8 (July 2, 1996) (emphasis in original).

As a threshold matter, the VE testified at the hearing that a limitation to frequent handling and feeling with the left, non-dominant upper extremity would still allow for the performance of a significant range of sedentary work. (ECF No. 14, PageID.118, 120-121). While SSR 98-9p cautions that manipulative limitations could significantly erode the sedentary job numbers, manipulative limitations do not *per se* eliminate all sedentary work. Rather, in the case where a manipulative limitation exists "it may be useful to consult a vocational resource." *Id.* That is exactly what the ALJ did here.

Further, the hypothetical modifiers posed to the VE (and mirrored in the RFC) make adequate provisions for the effect of CTS of the *right* (dominant) upper extremity. (*Id.*, PageID.61). First, the RFC restricts McClure to sedentary work which precludes lifting, carrying, pushing, and pulling of more than 10 pounds. 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at

16

a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). Second, the RFC precludes work involving "excessive vibration" and "concentrated use of hazardous moving machinery." (ECF No. 14, PageID.61).

The ALJ also considered and discussed McClure's testimony regarding the hand limitations. (*Id.*, PageID.62). He noted that McClure reported "full feeling in the right hand." (*Id.*). He cited McClure's testimony that he could pick up and hold small objects and could lift up to a gallon of milk. (*Id.*). He noted that McClure was able to drive for over one hour on the trip to the hearing location. (*Id.*).

The ALJ also provided adequate reasons for declining to impose additional right-sided manipulative limitation. He acknowledged that McClure underwent right carpal tunnel release in April 2018, citing post-surgical records stating that McClure was "very satisfied" with the results of surgery. (*Id.*, PageID.65). The ALJ cited the post-surgical records showing right-sided "mild discomfort" when pressure was applied to the right wrist and "some catching sensation" of the ring and small finger but no numbness or tingling. (*Id.*). He cited the treating recommendation to gradually increase activity. (*Id.*). The ALJ permissibly found that the lack of additional treatment created an inference that the condition had satisfactorily resolved. (*Id.*). *See Gregson v. Comm'r of Soc. Sec.*, No. 17-CV-

13600, 2019 WL 1253473, at *7 (E.D. Mich. Jan. 2, 2019) (Majzoub, M.J.), *report and recommendation adopted,* No. 17-13600, 2019 WL 762272 (E.D. Mich. Feb. 21, 2019) (ALJ did not err by noting that "the lack of treatment indicates that the claimant's symptoms were not as severe as alleged.").   While McClure argues that "[i]t appears" that he "continued to have symptoms and problems with his right dominant upper extremity," (ECF No. 16, PageID.455), the ALJ did not err in finding that the absence of additional treating records undermined the allegations of greater right-sided limitation.

As such, McClure has not met his burden "to prove the limitations resulting from this impairment at the RFC stage." *Randolph v. Comm'r of Soc. Sec.*, No. CV 15-11945, 2016 WL 7206711, at *6 (E.D. Mich. Aug. 16, 2016) (Grand, M.J.), *report and recommendation adopted,* No. 15-11945, 2016 WL 7178742 (E.D. Mich. Dec. 9, 2016); 20 C.F.R §§ 404.1512(c).

## B.    Time Off Task or Absences

McClure argues that his need to take frequent daytime breaks prevents him from working at a sustained pace.  (ECF No. 16, PageID.450-454).  He cites the VE's testimony that the need to be off task more than 10 percent of the workday or the need to be absent from work more than two days a month supports a disability finding.  (*Id*., PageID.452) citing (ECF No. 14, PageID.122).  He also contends

that the ALJ failed to address his testimony that he needed to recline to ease back

pain several times a day.  (ECF No. 16, PageID.453).

McClure's assertion that the ALJ failed to address his allegations regarding

time off task or absenteeism is without merit.  McClure testified that he was unable

to perform even sedentary, unskilled work on a full-time basis due to sleep

disturbances and the need to recline during the day due up to four times a day due

to back pain.  (ECF No. 14, PageID.113).  This testimony was duly noted by the

ALJ:

> [C]laimant testified that showing up for a job regularly would be
> problematic for him.  It is hard for him to get out of bed and get going
> at the right time every day.  He has to move to different positions to get
> comfortable.  He will lie down for 15 to 30 minutes about four times
> during the day to help alleviate his pain.  His most comfortable position
> is lying down with his legs elevated.

(*Id*., PageID.62).

The ALJ also provided adequate reasons for rejecting McClure's professed

level impairment.  (*Id*., PageID.63-65).  He cited Dr. Beimer's treating records

showing an unremarkable EMG of the lower extremities, good lower extremity

strength and a normal gait without the need for an assistive device.  (*Id*.,

PageID.63).  He noted that treating physician Dr. Beimer declined to find that

McClure was disabled from all work.  (*Id*., PageID.65, 306).  The ALJ noted a pain

specialist's finding of full strength except for slightly reduced strength of the right

hip and left knee.  (*Id*., PageID.63).  The ALJ further noted that while McClure's

documented need for steroid injections and ablation supported an RFC for a limited to a range of sedentary work, the evidence did not support a finding of disability. (*Id*., PageID.64). The ALJ found that the McClure's ability perform aerobic exercise and "almost daily" walking supported the non-disability finding. (*Id*., PageID.64-65).

McClure's remaining arguments do not present grounds for remand. While he claims that the ALJ failed to grasp that the relief from steroid injections was only temporary, the ALJ explicitly cited the treating records stating McClure obtained 100 percent relief for 24 hours and 50 percent relief for the following two weeks. (*Id*., PageID.63).

In regard to McClure's activities of daily living, he also cites a line of cases holding that the ability to perform activities on an intermittent basis, rather than continuously as required for full-time work, without more, does not support a non-disability finding. (ECF No. 16, PageID.457) (*citing Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967); *Stennett v. Comm'r Soc. Sec.,* 476 F. Supp. 2d. 665 (E.D. Mich. 2007)). However, both cases are distinguishable. In *Walston*, the Court found that the claimant's ability to perform sporadic household activity and driving did not translate into the ability to work full time. *Walston*, 381 F.2d at 586. However, the Court observed that Walston's claim for disability was also supported by the opinions of three doctors who "stated that Walston was unable to

work because of his condition." *Id.*  In contrast here, none of McClure's treating

sources opined that he was unable to work and one source actually rejected the

conclusion that he was disabled from all work.  (ECF No. 14, PageID.306).

Likewise, in *Stennett,* the court not only found that "the ALJ overstated the import"

of the daily activities but also mischaracterized post-surgical records and the

efficacy of physical therapy treatment.  *Stennett*, 476 F. Supp. at 672-673.  Here,

McClure has not shown that the non-disability finding is supported by a

mischaracterization of the medical evidence.

Additionally, McClure's testimony suggests that he prepared meals for his

family and transported his children to school and extracurricular activities on a

regular rather sporadic basis.  The ALJ's finding that McClure's regular activities

supported the non-disability finding is one of numerous reasons for declining to

find him disabled.  While the ALJ devoted one paragraph to McClure's regular

activities, which included taking short shopping trips, performing errands, and

keeping his children's schoolwork and schedules organized (ECF No. 14,

PageID.65), the three-page rationale for finding that McClure could perform

sedentary work is otherwise wholly devoted to the medical evidence supporting

that conclusion.  (*Id*., PageID.63-66).

McClure's related argument that the ALJ improperly rejected his professed

degree of limitation or failed to provide adequate reasons for doing so fails for the

same reasons.  While McClure disputes the finding that his ability to sit for over an hour in the hearing was improperly used to support the non-disability finding, the ALJ noted that McClure continued to sit despite being invited to change position at will.[5]  Despite McClure's contention that his condition had worsened, EMG studies of the lower extremities were normal, he exhibited a normal gait, did not require the use of a cane, exhibited full muscle strength, and was able to engage in a number of regular household activities and errands.  *Nagy v. Saul*, No. 19-13530, 2020 WL 8465909, at *9 (E.D. Mich. Dec. 15, 2020), *report and recommendation adopted sub nom. Nagy v. Comm'r of Soc. Sec.*, No. 19-CV-13530, 2021 WL 136227 (E.D. Mich. Jan. 14, 2021) (The plaintiff's normal gait, wide range of activities, and unremarkable clinical findings supported the ALJ's partial rejection of the subjective claims of limitation) (citing *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)) (An ALJ's assessment of a claimant's allegations entitled to "great weight").

---

[5] McClure cites *Tyler v. Weinberger*, 409 F. Supp. 776, 789 (E.D. Va. 1976) in which the reviewing court found that the claimant's ability to sit for over an hour at the hearing, without more, supported the non-disability finding.  *Id.*  The court found that the claimant's allegations of disability were "corroborated by medical evidence, expert medical opinion and lay testimony."  *Id.*  In contrast here, none of McClure's treating sources stated that he was unable to sit for up to one hour, much less that he was disabled from all work.

To the extent that McClure's arguments can be construed to include a criticism of the ALJ's treatment of the subjective claims, this argument fails.

### C.    The Sit/Stand Option

Contrary to McClure's contention, the RFC allowing standing for 15 minutes after sitting for one hour is well explained and supported.  While the ALJ acknowledged that the treating records post-dating the June 4, 2018 determination supported a sedentary RFC with a sit/stand option, he noted that "[a]dditional limitations" were "not warranted."  (*Id*., PageID.64).  He cited a normal EMG of the lower extremities and the absence of gait abnormalities.  (*Id.*).  He noted "no deficits with sensation and strength" except for slight reduced sensation at one examination.  (*Id.*).  The ALJ cited the treating records describing McClure's activity level as "moderate" and included aerobic exercise and walking.  (*Id*., PageID.65).  As to the ability to sit for up to one hour, the ALJ noted that McClure sat without apparent discomfort for the more than hour-long hearing.  (*Id.*).  By any measure, the ALJ provided an adequate explanation for finding that McClure could perform sedentary work with a sit/stand option.  *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) ( "ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.").

Likewise, McClure's related argument that the sit/stand option precludes sedentary work relies on a misreading of SSR 96-9p, *supra*.  Regarding the inclusion of a sit/stand option in an RFC limited to sedentary work, the Ruling notes as follows:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

1996 WL 374185, at *7.  Nowhere does the Ruling state that the inclusion of a sit/stand option is incompatible with unskilled, sedentary work.  Moreover, the ALJ complied with SSR 96-9p by specifying the frequency at which McClure required position changes and eliciting the VE's testimony as to the effect of the sit/stand option on the job base.  Again, the VE's testimony that a limitation to sedentary work with a sit/stand option of one hour sitting and 15 minutes standing would allow for a significant number of jobs constitutes substantial evidence in support of the Step Five determination.  *See Varley v. Sec'y of Health and Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987) (Substantial evidence "may be produced

through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations.").

Because the ALJ's finding that McClure could perform a significant range of sedentary work is supported by substantial evidence and well explained, a remand for either an award of benefits or further fact-finding is not warranted.

### D.     In Sum

The fact that substantial evidence supports the ALJ's sedentary work finding should however not be construed to downplay McClure's long work history, well-documented inability to perform his past relevant work, or the medical records showing some degree of ongoing physical limitation.  But the question before the Court is not whether McClure is capable of returning to his former job.  Because the non-disability determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Blakley, supra,* 581 F.3d at 406.

### VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's motion (ECF No. 19) be GRANTED, that McClure's motion (ECF No. 16) be DENIED, and the Commissioner's decision be AFFIRMED.

Dated:  February 3, 2022                    s/Kimberly G. Altman____
Detroit, Michigan                           KIMBERLY G. ALTMAN
                                            United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without merit,

it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 4, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager

27